2015 PA Super 88

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DONTE MOSLEY | |
| Appellant | No. 827 EDA 2014 |

Appeal from the Judgment Entered February 24, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007437-2012

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.:                            **FILED APRIL 20, 2015**

Donte Mosley appeals from his judgment of sentence, entered in the Court of Common Pleas of Delaware County, after being convicted by a jury of three counts of possession of a controlled substance[1] and one count of possession with the intent to deliver a controlled substance (cocaine).[2]  The Commonwealth sought, and the sentencing court applied, the mandatory minimum sentence of five years' imprisonment pursuant to 18 Pa.C.S. § 7508 (drug trafficking sentencing/penalties).  Mosley was sentenced to a term of 66-132 months' imprisonment for the intent to deliver charge, an

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(30).

aggravated-range sentence.[3]    After careful review, we affirm Mosley's convictions, vacate his judgment of sentence and remand for resentencing.

On August 13, 2012, at approximately 2:00 p.m., Ridley Township Police Officer Leo Doyle was on patrol in the Secane area in response to a complaint about illegal drug activity at the Presidential Square Apartments on South Avenue.  James Latticlaw, the complainant, had told the police that squatters were selling drugs out of his apartment.  Sergeant Charles Palo and Corporal Daniel Smith, also members of the Ridley Township Police Department, accompanied Officer Doyle to the Secane address in a separate police vehicle.  When the two police vehicles arrived at the apartment complex, the police observed a black Cadillac driving towards them and saw Latticlaw pointing toward the Cadillac.

After seeing Latticlaw gesture toward the Cadillac, both police vehicles followed the car as it pulled out of the parking lot.  While only a few feet behind the Cadillac, Officer Doyle saw Mosley, the driver of the Cadillac, put his arm out of the driver's side window and drop two clear plastic bags.[4]  Corporal Smith picked up the two bags while Officer Doyle activated his siren and police lights and pulled the Cadillac over.  Corporal Smith contacted

---

[3] The possession charges merged, for sentencing purposes, with the intent to deliver charge.

[4] Each bag was knotted at the top.  One bag contained five bags (baggies) of a white powdery substance.  N.T. Trial Testimony, 9/16/13, at 177.  The other bag contained three bags (baggies) of suspected heroin.  ***Id.***

Officer Doyle to tell him the baggies contained narcotics.[5] Doyle arrested Mosley and, in a search incident to arrest, recovered two cellular phones and $117.00 in cash from his person. Affidavit of Probable Cause, 8/13/12, at 1. No drugs or drug paraphernalia were found on the passenger in the Cadillac.

Prior to trial, Mosley filed a motion to suppress text messages that were viewed by a police officer on the two cell phones[6] confiscated from him during the search incident to his arrest. Ridley Township Police Officer John McDevitt testified that as Mosley was being processed at the police station on the instant charges, the officer viewed texts that kept "popping up" on the screens of the mobile phones. Officer McDevitt first testified that the phones were already powered on and they required no password or other manipulation (like "swiping") to view the texts. However, the officer later testified that he was unable to recall whether he had to swipe anything to view the text messages.

Mosley filed a pretrial motion to suppress the search of the two cell phones and the numerous text messages found on them, basing his arguments on authentication and hearsay grounds. Mosley filed a second

_____

[5] The parties stipulated that the Pennsylvania State Police Crime Lab evaluated the substances found in the two plastic bags discarded from the Cadillac and determined the interior baggies contained 10.5 grams of cocaine, 0.64 grams of heroin, and 6 oxycontin pills. The baggies of heroin had the words "crazy horse" written on them.

[6] One cell phone was a Samsung and the other phone was an HTC.

motion seeking to suppress all data obtained as a result of a subsequent search warrant for the phones. After the suppression hearing, but before the court rendered a decision, Mosley filed a motion to open the hearing in order to present testimony to prove that the texts could not have been viewed by the police unless they took some affirmative action to read them. On April 22, 2013, all pretrial motions were denied.

On September 16-17, 2013, a jury trial was held. At trial, Sergeant Kenneth Rutherford, an expert in the field of drugs and drug investigations, testified for the Commonwealth. Officer Doyle had contacted Sgt. Rutherford about the instant case, gave him basic information about the arrest (including what was confiscated at the stop) and asked the sergeant to prepare a search warrant. In response, Sgt. Rutherford prepared an application for a search warrant,[7] specifically requesting that the contents of the cell phones found on Mosley be searched. Text messages from both cell

---

[7] The search warrant identified the following items to be searched and seized:

> Any and all text messages (incoming and outgoing), email messages (incoming and outgoing), photographs, contacts and other forms of electronic communication. Any items used to keep drug transaction records (spreadsheets etc.). Any and all secondary cell phone applications (and its contents) which are capable of sending receiving voice calls, text messages, and emails. Any and all other contraband.

Application for Search Warrant and Authorization, 2/28/13, at 1, 4.

phones revealed personal messages received by Mosley from friends and family. Several other text messages were indicative of drug related sales/activity. The cell phone report records were marked and admitted into evidence at trial. The trial court gave the jury a limiting instruction on the text messages.[8]

At the conclusion of trial, Mosley was found guilty of possession of a controlled substance (oxycodone), possession of a controlled substance (heroin), possession of a controlled substance (cocaine), and possession with intent to deliver. Mosley was sentenced to 66-132 months' imprisonment, followed by 5 years of state probation. Mosley filed an

---

[8] The trial judge gave the following limiting instruction as to text messages:

> This evidence is before you for a limited purpose and it is for the **purpose of tending to show the Defendant is fluent in the language used by those persons who deal in illegal drug transactions.** This evidence must not be construed by you or considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the Defendant is a person of bad character or criminal tendencies from which you might include – be inclined to infer guilt. The Defendant contends that he is not the transmitter or receiver of the text messages. However, you may consider circumstantial evidence in evaluating this issue and provide whatever weight you deem appropriate thereto.

N.T. Jury Trial, 9/17/13, at 165 (emphasis added).

unsuccessful motion in arrest of judgment and/or for a new trial. This appeal follows.

On appeal, Mosley raises the following issues for our consideration:[9]

(1)   Did the lower court err in admitting the hearsay statements testified to by Officer Leo Doyle regarding a telephone call he received as well as a statement made at the scene?

(2)   Did the lower court err in allowing evidence of text messages despite the fact that said messages were not properly authenticated, but were also hearsay?

(3)   Did the lower court err in failing to suppress evidence of text messages taken from the cellphones by the arresting officers?

(4)   Did the lower court err in failing to suppress the information and/or text messages taken from the above cellphones as a result of a search warrant since said evidence was the "fruit of the poisonous tree"?

(5)   Did the lower court err in failing to suppress the said text messages taken pursuant to a search warrant from the cell phones found on the person of the Appellant as a violation of the United States Constitution, Amendments 4 and 14[,] and the Pennsylvania Constitution, Article 1, Section 8[,] for failure to link the items requested to be searched with the alleged crime committed?

(6)   Did the lower court err in finding that there was sufficient evidence to uphold the verdict and also err in finding that the verdict was not against the weight of the evidence?

(7)   Did the lower court err in failing to reopen the suppression hearing to allow Appellant to introduce evidence contradicting the police officers concerning their reading of the text messages?

_____

[9] We have consolidated our review of issues 2-5, as they are intertwined.

(8)    Was sentencing the Appellant to a five year mandatory minimum sentence pursuant to 18 Pa.C.S. [§]7508 illegal because the statute was unconstitutional? <u>Admission of Officer Doyle's Statements</u>

Mosley asserts that the trial court erred in admitting hearsay evidence regarding "drug activity" offered by Commonwealth witness, Officer Leo Doyle. Officer Doyle was the first officer to appear at the scene to investigate Latticlaw's complaint, which led to him following, stopping and arresting Mosley. Mosley claims that this hearsay testimony was highly prejudicial because it negated his defense (that the passenger in the vehicle was the one who controlled the drugs and not him). Mosley also contends that admission of the testimony was reversible error as evidence of his guilt was not overwhelming.

While certain out-of-court statements offered to explain a course of police conduct are admissible because they are offered merely to show the information upon which police acted, some out-of-court statements bearing upon police conduct are inadmissible because they may be considered by the jury as substantive evidence of guilt, especially where the accused's right to cross-examine and confront witnesses against him would be nullified. **_Commonwealth v. Palsa_**, 555 A.2d 808, 810 (Pa. 1989).

Mosley's arresting officer, Officer Leo Doyle, testified at trial regarding a phone call he received from James Latticlaw, who indicated that Mosley and a third party were "squatters" selling drugs out of Latticlaw's apartment. Officer Doyle also testified that when he arrived at the apartment complex to

investigate the matter, Latticlaw pointed at the black Cadillac driven by Mosley, indicating to Officer Doyle that the occupants were the two men who had been involved in drug activity at his apartment. Specifically, the prosecutor questioned Officer Doyle at trial as follows:

> Q:  What area did they make a complaint?  A specific type of crime or of a specific incident that happened in a certain place?
>
> A:  Yes.
>
> Q:  What – what was that?
>
> A:  Drug activity.
>
> Q:  Drug activity.  And what location?
>
> A:  At the 640 South.  I forget the exact apartment, but James Latticelaw[sic]'s apartment in 640 South Avenue, Presidential Square.
>
> *    *    *
>
> A:  I was – the van was in front of me with Sergeant Paylow and Corporal Smith and I was behind the van and the black Cadillac was coming towards me occupied by two black males.  Okay. And I also then observed James Latticelaw [sic], who I know from running that area and having calls, pointing at the car making a motion that that's the car that was – that had the two occupants in it that were why we were there.

N.T. Jury Trial, 9/16/13, at 122-24.

The trial court justified its decision to admit Officer Doyle's testimony as follows:

> This [c]ourt properly admitted the statements, as they were introduced by the prosecution to show why Officer Doyle went to the Presidential Apartments and why his attention was drawn to the black Cadillac, not to prove the truth of the matter asserted.

Trial Court Opinion, 5/15/14, at 6.

In **Commonwealth v. Yates**, 613 A.2d 542 (Pa. 1992), the defendant was convicted of possession and possession with the intent to deliver. At trial, two officers testified why they went to the specific area where the defendant was arrested. In their testimony, the officers stated "that an informant had notified them that a large black male, i.e. [defendant], was 'dealing drugs' at that location." **Id.** at 543. The trial court admitted the testimony, reasoning that the testimony explained the course of police conduct and that, without the testimony, the jury would not have any way of knowing why the police went to that location. Even though the trial court gave the jury a cautionary instruction, the Supreme Court reversed the defendant's conviction and granted a new trial since the informant's statements were of a highly incriminating nature, contained specific assertions of criminal conduct, and would have the unavoidable effect of prejudice. **Id.**

Similarly, Mosely was charged and convicted of possession and possession with the intent to deliver. Therefore, Officer Doyle's statement that he responded to Latticlaw's apartment complex in response to a complaint that defendant was conducting "drug activity" would likewise unavoidably "have had a prejudicial impact." **Id.** Moreover, unlike the trial court in **Yates**, here the judge did not give the jury a cautionary instruction despite the defense's objections to the police officer's alleged hearsay statements. Where Officer Doyle's testimony contained specific assertions of

criminal conduct, it was likely that the jury would interpret this testimony from a police officer as substantive evidence of Mosley's guilt; it also deprived Mosley of his right to confront and cross-examine Latticlaw at trial. *Cf. Commonwealth v. Taggart*, 997 A.2d 1189 (Pa. Super. 2010) (where officer testified that defendant fit description of robber, and prosecutor cut him off and elicited testimony that defendant was not one of robbers described in flash information, defendant not deprived of opportunity to confront informant who provided information in flash report).

However, "not all error at trial . . . entitles a [defendant] to a new trial, and [t]he harmless error doctrine . . . reflects the reality that the accused is entitled to a fair trial, not a perfect trial[.]" *Commonwealth v. West*, 834 A.2d 625, 634 (Pa. Super. 2003). Moreover, it is well established that "an error which, when viewed by itself, is not minimal, may nonetheless be determined harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence." *Commonwealth v. Story*, 383 A.2d 155, 165 (Pa. 1978).

Because there is relevant, cumulative evidence indicative of drug activity, we find that the admission of this out-of-court statement, while an abuse of the trial court's discretion, was harmless error. Here, there was independent evidence showing that Mosley threw bags of drugs from a car he was driving, while being pursued by the police. Mosley's possession of two cell phones and U.S. currency on his person was consistent with drug activity, while the weight and packaging of the drugs was indicative of

possession with the intent to deliver. *See Commonwealth v. Watson*, 945 A.2d 174 (Pa. Super. 2008) (harmless error exists where erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to erroneously admitted evidence); *see also Commonwealth v. Williams* (erroneous admission of evidence does not necessarily entitle defendant to relief if error is harmless).

Failure to Suppress Text Messages

Mosley contends that Officers McDevitt and Doyle should have secured a search warrant before reading the text messages on the cell phones. Recently, in *Commonwealth v. Stem*, 96 A.3d 407 (Pa. Super. 2014), our Court addressed this issue, relying upon the legal analysis and holding of the United States Supreme Court in *Riley v. Calfornia*, 134 S. Ct. 2473 (2014). In *Riley*, the Supreme Court determined that warrantless searches of a cellular telephone conducted incident to a defendant's arrest are unconstitutional. *Id.* at 2495.

Here, there is no question that Officer McDevitt viewed the text messages on the cell phones without first securing a warrant. The record is unclear,[10] however, regarding whether Officer McDevitt actually "searched"

---

[10] *Compare* N.T. Suppression Hearing, 4/18/13 (McDevitt testifying that he did not click on any icon to view messages, but that they just "were popping up ... coming up on the screen") and *id.* at 83-84 (McDevitt testifying that he did not have to do anything to view the messages on the cell phone) *with id.* at 84 (McDevitt testifying that he didn't recall whether he had to swipe anything to view the text messages)

the phones (i.e., by scrolling through messages, swiping the phone on, or otherwise pulling up the texts) like in **Stem**, where a police officer inspected the cell phone after the defendant's arrest, turned on the phone, hit the picture icon and then searched cell phone data. **Stem**, 96 A.2d at 408. However, even if Officer McDevitt improperly searched and viewed text messages on the cell phones confiscated incident to Mosley's arrest, we find that because a valid warrant was subsequently issued to search the phones, any improper viewing by Officer McDevitt was harmless error.

Our Supreme Court has held that "where there is probable cause independent of police misconduct that is sufficient in itself to support the issuance of a warrant, the police should not be placed in a worse situation than they would have been absent the error or violation under which the evidence was seized." **Commonwealth v. Brundidge**, 620 A.2d 1115, 1119-20 (Pa. 1993).

> There is a two-prong test governing the application of the independent source doctrine: (1) whether the decision to seek a warrant was prompted by what was seen during the initial warrantless entry; and, (2) whether the magistrate was informed at all of the information improperly obtained.

**Commonwealth v. Ruey**, 854 A.2d 560, 564-65 (Pa. Super. 2004).

Here, Sgt. Rutherford, who prepared the warrant, testified at the suppression hearing that he never spoke with Officer McDevitt prior to or during the process of securing the search warrant for the cellphones. Moreover, while Sgt. Rutherford did speak with Mosley's arresting officer, Officer Doyle, who was aware of the content of the text messages and who

- 12 -

asked Sgt. Rutherford to prepare the warrant, the record shows that Officer Doyle did not discuss the content of the text messages with Sgt. Rutherford. N.T. Suppression Hearing, at 4/18/13, at 11-12, 56. Accordingly, we find that there was probable cause independent of any alleged misconduct on the part of Officer McDevitt in viewing the text messages prior to the issuance of a warrant. This probable cause is sufficient in itself to support the subsequent warrant secured by Sgt. Rutherford. **Ruey**, **supra**.

<u>Admission of Text Messages at Trial</u>

<u>Authentication/Authorship</u>

Mosley next asserts that the trial court improperly permitted testimony at trial regarding text messages from the two cellphones taken from his person, incident to his arrest, where the messages had never been authenticated and constituted inadmissible hearsay.

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. **Commonwealth v. Lilliock**, 740 A.2d 237 (Pa. Super. 1999). Generally, the requirement of authentication or identification as a condition precedent to the admissibility of evidence is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Pa.R.E. 901(a).

With regard to "the admissibility of electronic communication, such messages are to be evaluated on a case-by-case basis as any other document to determine whether or not there has been an adequate

foundational showing of their relevance and authenticity." *In the Interest of F.P.*, 878 A.2d 91, 96 (Pa. Super. 2005). "[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." *Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa. Super. 2011) (*Koch*).

In *Commonwealth v. Koch*, 106 A.3d 705 (Pa. 2014) (*Koch II*), an equally divided Supreme Court[11] affirmed our Court's grant of a new trial, wherein we held that: (1) the defendant's text messages had not been authenticated; (2) the messages were inadmissible hearsay that were not offered for any reason other than to show the truth of the matter asserted as to the content of the messages; and (3) admission of the unauthenticated hearsay messages was not harmless error because the prejudicial effect of the evidence was "so pervasive in tending to show that [defendant] took an active role in an illicit [drug selling] enterprise that it [could not] be deemed harmless." *Koch*, 39 A.3d at 1005-07.

While the defendant in *Koch* admitted to owning the cell phone, and the content of the messages on the phone indicated drug sale activity, it was also conceded at trial that someone other than the defendant likely authored

---

[11] When a judgment of sentence is affirmed by an equally divided court, as in the *Koch* case, no precedent is established and the holding is not binding on other cases. *Commonwealth v. James*, 427 A.2d 148 (Pa. 1981).

- 14 -

at least some of the text messages. Even so, the mere assertion of ownership of the phone did not establish that defendant was an active correspondent in the particular drug sales text messages. *Id.* at 1003. Moreover, confirmation that the number or address belongs to a particular person also did not satisfy the authentication requirement under the Rules of Evidence. *Id.* at 1005. Ultimately, the Court found that the Commonwealth failed to establish, either by direct or circumstantial evidence, whether defendant was the author of the texts. *Id.*

However, the *Koch* Court, referencing Rule 901, explained the ways in which text messages could be authenticated by using: (1) first-hand corroborating testimony from either the author or the sender; and/or (2) circumstantial evidence, which includes distinctive characteristics like information specifying the author-sender, reference to or correspondence with relevant events preceding or following the communication in question; or (3) any other facts or aspects of the communication that signify it to be what its proponent claims it to be. *Id.* at 1002. Ultimately, the Court found that the trial court abused its discretion in admitting the text messages where the cell phone's physical proximity to the defendant at the time of her arrest had no probative value with regard to whether she authored the messages. *Id.* at 1005. Finally, because there was no evidence substantiating that defendant had written the drug-related text messages, it was improper to find that the identity of the sender had been corroborated. *Id.*

As the Court in **Koch** acknowledged, the authentication inquiry will, by necessity, "be evaluated on a case-by-case basis as any other document to determine whether there has been an adequate foundation showing of its relevance and authenticity." **Id.** at 1003 (citation omitted). Instantly, Mosley denied that he owned the two cell phones that were confiscated from his person incident to his arrest. Moreover, there was no first-hand corroborating testimony from a witness regarding the authenticity of the text messages. Pa.R.E. 901(b)(1). In addition, there were two email addresses attached to the cell phones, which could indicate that someone else had access to or owned the phones. Finally, while several of the text messages could be interpreted as indicative of drug dealing, none of the specific drug-related communications identified Mosley. In fact, Donte (Mosley's first name) is only referenced in a few text messages dated months prior to the instant investigation. None of the text messages sent from the Samsung phone concerned drugs and there were no drug-related text messages sent from the phones around the time of Mosley's arrest.

Unlike the defendant in **Koch**, who had been charged as both an accomplice and a conspirator, here Mosley was charged with purely possessory offenses, including with the intent to deliver. Therefore, the authorship of the texts is more critical to an authentication analysis under the facts of this specific case. The fact that that the trial court failed to give an authentication instruction to the jury further compounds the effect that the issue of authorship has on the case. Here, the court generally instructed

the jury with regard to circumstantial evidence and the weight to be accorded it in terms of evaluating whether Mosley was the transmitter or receiver of the messages.[12]  However, the court did not instruct the jury that in order to prove authentication, circumstantial evidence which tends to corroborate the identity of the sender *is required*.

Instantly, the trial court found that the Commonwealth authenticated the messages based on the following facts:  (1) similar contacts in both phones; (2) Donte Mosley's mother ("Momma Dooks") as a contact on both phones; (3) mother of Mosley's child texting similar messages on both phones; (4) prior incoming texts referencing "Donte".  N.T. Jury Trial, 4/18/13, at 93.  While these facts may support authentication, the court does not take into account the fact that the texts referencing "Donte" occurred more than one week prior to the current incident and that the texts from Momma Dooks were sent in April, June and July of 2012 – weeks to

---

[12] Interestingly, the trial court stated:

> In light of the testimony that's been presented[,] I'm going to say the authentication of electronic communications-like documents, requires more than mere confirmation that the number address belonged to a particular person.  Circumstantial evidence which tends to corroborate the identity of the sender is required.  I'm going to give that instruction.

N.T. Jury Trial, 9/17/13, at 101.  Despite this statement, the court never gave an instruction specifically referencing authentication of the messages; defense counsel objected to this omission.  **Id.** at 112.

months before Mosley's arrest. Finally, and most relevant to the issue of authorship, the court does not discuss the fact that there is no reference to Donte in any of the drug-related text messages.

Like **Koch**, this is a close case regarding authorship and authentication. Here, there is no evidence, direct or circumstantial, tending to substantiate that Mosley was the author of the drug-related text messages. Moreover, no testimony was presented from persons who sent or received the text messages. While there may be contextual clues with regard to some texts, (i.e., one of the text messages is from Mosley's mother on July 26, 2012, just 18 days before his arrest, wishing Mosley a happy birthday), there are no such clues in the drug-related texts messages themselves tending to reveal the identity of the sender. **Compare Koch**, **supra** ("reference to or correspondence with relevant events that precede or follow the communication in question" may be a distinctive characteristic under Rule 901(b)(4)). Additionally, the fact that a text message corroborates the "crazy horse" stamp on one of the baggies of drugs discarded by Mosley just prior to his arrest is merely circumstantial evidence of authentication. Nothing in that specific message, however, indicates the identity of the author or recipient of the message.

As the United States Supreme Court noted in **Riley**, **supra**, more substantial privacy interests are at stake when digital data is in play:

> Cell phones differ in both a quantitative sense from other objects that might be kept on an arrestee's person. The term "cell phone" is itself misleading shorthand; many of these devices are

- 18 -

in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.

*Id.* at 2489. Moreover, due to their immense capacity to store data, cell phones "have several interrelated consequences for privacy[,]" including the different types of data (i.e., addresses, notes, bank statements, prescriptions, videos) that can be stored on them, the sheer amount of information with regard to each type of stored data, and the fact that the data stored on the cell phone can date back months or even years to the original purchase of the phone (or even beyond that date with the ability to transfer data from an older phone to a newer one). *Id.* Finally, due to the fact that most people in the general population carry a cell phone on their person throughout the day, "more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives – from the mundane to the intimate." *Id.* at 2490 (citation omitted).

Bearing in mind the unique nature of a cell phone and its pervasiveness in everyday society, we believe that in order to use content from a cell phone as testimonial evidence in a criminal prosecution, the Commonwealth must clearly prove its authentication. Because there was no evidence, direct or circumstantial, clearly proving that Mosley was the author of the drug-related text messages, or any corroborating witness testimony regarding authenticity of the messages, we find that the trial court erred in

determining that the drug-related texts were authenticated properly in the instant case.[13]

Hearsay

Even concluding that the text messages were not properly authenticated, we must still address Mosley's claims that the text messages were inadmissible hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule. **See** Pa.R.E. 801(c); Pa.R.E. 802; **Commonwealth v. May**, 898 A.2d 559, 565 (Pa. 2006). When this type of evidence is in question, the distinction can be subtle between a statement that, if admitted, would serve as affirmative and substantive evidence of the accused's guilt, and non-hearsay that may be admitted to establish some other aspect of a case, such as motive or a witness's relevant course of conduct.

Here, the Commonwealth argues that the texts are admissible under the hearsay exception set forth in Pa.R.E. 803(25), which states, "[t]he statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; [or] (B) is one the party manifested that it adopted or believed to be true." Specifically, the Commonwealth claims that Mosley's responses to drug requests that were in

---

[13] We leave for another day the quantum and quality of evidence necessary to "clearly" prove authentication of text messages.

the form of questions falls within the section 803(25) hearsay exception because they were admitted to provide context for the outgoing text messages (statements) he sent.

With respect to the issue of inadmissible hearsay in *Koch*, a detective, who was a Commonwealth expert witness, testified that in his opinion the text messages found on the defendant's cell phone, in conjunction with other factors (bongs, pipes, large amounts of cash, drug scales) were consistent with drug sales that implicated the defendant, even though the detective conceded that the author of the drug-related text messages could not be definitively ascertained, that several texts were incomplete and that some messages referenced the defendant in the third person. *Koch*, 39 A.3d at 1002-1003. In addition, the prosecutor acknowledged that the purpose of the text evidence was to show that defendant's phone was used in drug transactions, and, therefore, that it makes it more probable than not that when the defendant possessed the drugs she did so with the intent to deliver it as opposed to for personal use. *Id.* at 1005-06. As a result, the Court concluded that the only relevance of the evidence was to prove the truth of the matter asserted – that there were drug-related text messages on defendant's cell phone and, therefore, that admission of the messages was an abuse of discretion and not harmless error. *Id.* at 1006-07.

Similarly, here Sgt. Rutherford testified that there were several text messages on the cell phones that, in his professional opinion, appeared to involve drug trafficking or setting up deals. N.T. Jury Trial, 9/17/13, at 55.

He also testified that drug dealers often carry two phones, one personal and one for business, and that cell phones are the main mode of communication in the drug dealing trade. *Id.* at 55-56, 41. However, Sgt. Rutherford testified that there was no identifying information regarding Mosley in any of the drug-related texts on either phone. *Id.* at 59-62, 71. On direct examination, Sgt. Rutherford testified that narcotics sales are frequently set up with text messaging, *id.* at 26, and that because there were similar numbers on both cell phones and some of the text messages included Mosely's name, such facts were consistent with a pattern of drug sales.

On direct examination by the prosecution, Sgt. Rutherford testified that the phones contained text messages from various people indicating "there was a sale of narcotics, there was a request for different types of narcotics, drugs, meet, locations, places to meet, things like that." *Id.* at 29. Sergeant Rutherford consistently testified to common street terms used in illegal drug sales, the manner in which dealers often stamp their bags of drugs with symbols and wording, and that text messages are often sent to a phone in an attempt to buy drugs. Ultimately, the prosecutor asked Sgt. Rutherford if, based on his expertise, he had formed an opinion that the drugs and cell phones confiscated from Mosley were associated with the distribution of drugs, or just mere possession for personal use, to which he replied:

> Yes. A combination. I take into account everything, the totality of everything. You know, a combination of the packaging, the text messages, this is consistent with someone who is involved

with the sale of narcotics. And in this case, different types of narcotics.

\* \* \*

A lot of times dealers – I mean, especially with the heroin because the weights can really affect severe jail terms. They don't like to carry a whole lot. I mean, they'd rather have less. A lot of times you'll see – in some of the text messages he says what do you need. What do you need because sometimes – depending on where they set up their operation, they may only come out with what you ask for.

*Id.* at 46, 52.

Taking into account the content of the texts in this case, as well as the erroneously admitted evidence of Officer Doyle's statement regarding drug activity, we conclude that under *Koch* the admission of the messages was an abuse of discretion where the texts were admitted to prove the truth of the matter asserted – that Mosley possessed the drugs with the intent to deliver. However, if we discount the improperly admitted text messages and Officer Doyle's statement, we conclude that there is substantially similar evidence showing that Mosley possessed the drugs with the intent to deliver. *See infra* at 23-24. Therefore, we find that the improper admission of the statement and text messages was harmless error, did not unduly prejudice Mosley, and still resulted in a fair trial. *See Watson*, *supra*; *West*, *supra*; *Story*, *supra*.

Sufficiency & Weight of the Evidence

Mosley contends that there was insufficient evidence to prove that he committed the crimes of possession and possession with intent to deliver.

Specifically, he argues that the passenger in the Cadillac was just as likely to have possessed the drugs as he was and that the Commonwealth failed to show that he exercised conscious dominion over the drugs.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. ***Commonwealth v. Randall***, 758 A.2d 669, 674 (Pa. Super. 2000).

First, Mosley was driving the car from which two clear plastic bags (each containing multiple baggies within) were thrown out of the driver's side window. Second, no drugs, paraphernalia or other incriminating drug evidence was found on the passenger in the Cadillac. Third, expert testimony by Sgt. Rutherford confirmed that the packaging, weight and type of drugs, in addition to the $117.00 and cell phones found on Mosley's person at the time of his arrest, are all indicative of possessing drugs with the intent to deliver. Accordingly, we find that there was sufficient evidence to support Mosley's conviction for possession and possession with the intent to deliver. ***Cf. Koch***, ***supra*** at 1007 (Commonwealth failed to present overwhelming properly admitted evidence regarding defendant's involvement in drug transactions; prosecution's case consisted of text message evidence and that drugs were found in defendant's shared

bedroom, in common areas of home, and no drugs or money found on defendant's person).

Next, Mosley contends that the verdict is against the weight of the evidence, where the actual possessor of the drugs thrown from the car was not and could not be determined. We disagree.

When a defendant challenges the weight of the evidence, relief in the form of a new trial may be granted only where the verdict shocks one's sense of justice. This Court reviews the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the weight of the evidence. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003); *Commonwealth v. Rabold*, 920 A.2d 857, 860-61 (Pa. Super. 2007), *aff'd* 951 A.2d 329 (Pa. 2008). In reviewing the trial court's decision concerning the weight of the evidence, an appellate court is not passing on the credibility of witnesses. *Commonwealth v. Woody*, 679 A.2d 817, 819-20 (Pa. Super. 1996). This is a function that is solely within the province of the finder of fact which is free to believe all, part of none of the evidence. *Id.*

Here, the jury heard the evidence that Mosely was the driver of the black Cadillac, that two bags later identified as containing drugs were discarded from the driver's side window while the vehicle was being pursued by the police, and that $117 in U.S. currency, and two cell phones were found on his person upon being stopped and searched. A Commonwealth expert testified that this evidence was indicative of drug possession and

possession with the intent to deliver. Accordingly, we find that given the evidence presented to prove that Mosley committed these possessory offenses, the verdict does not shock one's sense of justice; the court's decision to deny the challenge to the weight of the evidence is not contrary to law, manifestly unreasonable or the result of bias, prejudice, partiality or ill-will. ***Champney***, ***supra***.

Reopen Suppression Hearing

Mosley next contends that the trial court improperly denied his request, at the end of the suppression hearing, to reopen the record to permit him to introduce testimony regarding the operation of and access to the cell phones. Specifically, Mosley asserted that because defense counsel was surprised at the hearing by Officer McDevitt's testimony regarding the operation of the cell phone, counsel needed proof that in order to view the texts, some affirmative action by the officer (such as swiping or unlocking with a password) needed to occur. Having found that any improper viewing of the text messages, by Officer McDevitt, on the cell phones confiscated incident to Mosley's arrest was harmless error in light of the subsequently and independently secured search warrant, we find this issue moot on appeal.

### ***Alleyne*** Sentencing Issue

Finally, Mosley contends that the trial court's application of the mandatory minimum to his sentence is illegal because the United States Supreme Court's decision, ***Alleyne v. United States***, 133 S.Ct. 2151

(2013), has rendered the sentencing scheme under section 7508 constitutionally suspect. Additionally, he claims that even though the jury used a special verdict to allow the factfinder to determine the weight of the drugs possessed, by a reasonable doubt, the verdict still violates section 7508 and its plain legislative intent. We agree.

First, we must address the Commonwealth's contention that Mosley has waived this issue on appeal due to his failure to include an **Alleyne**-based sentence challenge at sentencing, in his post-sentence motion, or in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (en banc),[14] our Court observed that "where [a]pplication of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits[,] [sic] [l]egality of sentence questions are not waivable" and may be raised *sua sponte* by this Court.[15]

_____

[14] In **Watley**, the defendant did not even raise his **Alleyne** argument on appeal. Rather, this Court raised the issue *sua sponte*.

[15] We are aware that our Supreme Court has accepted allowance of appeal on the issue of whether **Alleyne** relates to the legality of sentence, stating as the issue follows:

> Whether a challenge to a sentence pursuant to **Alleyne v. United States**, 133 S.Ct. 2151 (2013), implicates the legality of the sentence and is therefore non-waivable.

**Commonwealth v. Johnson**, 93 A.3d 806 (Pa. 2014). However, until the Supreme Court overrules the non-waivability language found in **Watley**, we are bound by that case and its progeny.
*(Footnote Continued Next Page)*

Because Mosley's claim falls within this narrow ambit of cases and, therefore, is not subject to traditional issue preservation, we will address its merits.

In *Alleyne*, *supra*, a case concerning the application of a federal mandatory minimum statute, the Supreme Court held that any fact that triggers an increase in the mandatory minimum sentence for a crime is necessarily an element of the offense. *Id.* at 2163-64. The Supreme Court reasoned that "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime" and consequently, the Sixth Amendment requires that every element of the crime, including any fact that triggers the mandatory minimum, must be alleged in the charging document, submitted to a jury, and found beyond a reasonable doubt. *Id.* at 2160-64.

In *Commonwealth v. Munday*, 78 A.3d 661 (Pa. Super. 2013), our Court discussed the application of *Alleyne* to this Commonwealth's mandatory minimum statutes:

> This term, in *Alleyne*, the United States Supreme Court expressly overruled *Harris*, holding that any fact that increases the mandatory minimum sentence for a crime "is 'an element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S.Ct. at 2155, 2163. The *Alleyne* majority reasoned that "[w]hile Harris limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> mandatory minimum." [*Id.*] at 2160. This is because "[i]t is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime[,]" and "it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment." *Id.* at 2161. Thus, "[t]his reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.*

*Id.* at 665. In *Munday*, the Court held that even where a statute specifically stated that its "provisions . . . shall not be an element of the crime,"[16] the sentencing factor [or factual predicate] at issue still had to be determined by the factfinder, beyond a reasonable doubt. *Id.* at 666. Thus, the Court found that the defendant's sentence, which included the mandatory minimum sentence under section 9712.1 (sentences for certain drug offenses committed with firearms), violated the Due Process Clause of the Fourteenth Amendment and the jury trial guarantee of the Sixth Amendment. As a result, the Court vacated the defendant's judgment of sentence and remanded for resentencing. *Id.* at 667.

Instantly, Mosley was sentenced pursuant to the mandatory minimum statute, section 7508 of the Sentencing Code, which states, in pertinent part:

---

[16] We note that section 7508 contains identical language in its "proof at sentencing" subsection as that found in other mandatory minimum statutes. *See also* 18 Pa.C.S. § 6317(b) & 42 Pa.C.S. § 9712.1(c) (identical proof of sentencing provision language).

(a) General rule. --Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

(3) *A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves* or is any salt, compound, derivative or preparation of coca leaves or is any salt, compound, derivative or preparation which is chemically equivalent or identical with any of these substances or is any mixture containing any of these substances except decocainized coca leaves or extracts of coca leaves which (extracts) do not contain cocaine or ecgonine *shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:*

(ii) **when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams**; three years in prison and a fine of $ 15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $ 30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity[.]

(b) Proof of sentencing. --*Provisions of this section shall not be an element of the crime.* Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. *The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.*

18 Pa.C.S. § 7508(a)(3)(ii) (emphasis added), (b) (emphasis added).

Therefore the factual predicate of section 7508 is that the aggregate weight

of the prohibited substance possessed by the defendant be at least 10 and no more than 100 grams.

In **Commonwealth v. Thompson**, 93 A.3d 478 (Pa. Super. 2014), the trial court applied the mandatory minimum provisions of section 7508 to the defendant's sentence. On appeal, our Court held that because the weight of the drugs possessed by the defendant had not been determined by the fact-finder, nor proven beyond a reasonable doubt, the defendant's sentence was illegal and required vacation. Specifically, the Court noted that section 7508(a) cannot be constitutionally applied in light of **Alleyne**, or it would result in an illegal sentence. Similarly, in **Commonwealth v. Fennell**, 105 A.3d 13 (Pa. Super. 2014), where the defendant stipulated to the weight of the drugs for purposes of applying the mandatory minimum to his sentence, our Court also concluded that section 7508(b), which permits the trial court to find the necessary elements by a preponderance of the evidence, was not severable from the rest of the statute. The Court concluded that stipulating to the drug's weight, in effect, allows a trial court to impose a mandatory minimum outside the statutory framework, where such procedures are solely within the province of the factfinder. **Id.** at *20. As a result the Court deemed section 7508 unconstitutional and that any mandatory minimum imposed under this statue is illegal. **Id.** at *15-18.

Although the principles of **Alleyne** and it progeny apply to Mosley's section 7508 mandatory minimum sentence, the sentencing procedure in the instant case differs from that employed in **Thompson** and **Fennell**.[17] As a result, the Commonwealth contends that Mosley's sentence should not be deemed illegal. We disagree.

Here, the jury was presented with a special verdict form that included the specific issue:

> If you find the defendant guilty of Count 4(c): possession with intent to deliver, do you find the defendant guilty of possession with intent to deliver **greater than 10 grams of cocaine?**

Jury Verdict Form, 9/17/13 (emphasis added). Therefore, the issue regarding the weight of the drugs possessed by Mosley appears to have been determined, beyond a reasonable doubt, by the jury as factfinder. However, our Court has held that trial courts lack the authority to employ special verdict slips in cases involving mandatory minimum sentences that implicate **Alleyne**. **See Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014); **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (en banc).

---

[17] **See also Commonwealth v. Vargas**, 2014 PA Super. 289 (filed December 31, 2014) (relying on **Fennell** which held section 7508 unconstitutional, as applied in light of **Alleyne**, and that even though defendant stipulated to weight of drugs, sentence applying mandatory minimum was illegal).

In **Valentine**, the defendant had been convicted by a jury of robbery and sentenced to 5-10 years' imprisonment, which included application of two mandatory minimum sentencing provisions, 42 Pa.C.S. §§ 9712 (visible possession of firearm) and 9713 (offense committed in/near public transportation). **Valentine**, 101 A.3d at 804-805. Similar to the instant case, the trial court presented the jury with a special verdict slip, asking it to determine whether the factual predicates had been proven beyond a reasonable doubt. **Id.** On appeal, the defendant, like Mosley, raised the issue whether the mandatory minimum sentence imposed was illegal since the provisions of the sentencing statutes were rendered unconstitutional in light of **Alleyne**. In coming to its decision, the **Valentine** Court found **Newman**, **supra**, instructive, which also reviewed the constitutionality of section 9712 and determined that the factual predicate of that statute (visible possession of firearm) must be presented to the factfinder and determined beyond a reasonable doubt. Notably, the **Newman** Court declined to accept the Commonwealth's proposed remedy to have the case remanded for a sentencing jury to determine beyond a reasonable doubt whether the Commonwealth had proven the factual predicates of section 9712.

In reaching its holding, the **Newman** Court stated:

The Commonwealth's suggestion that we remand for a sentencing jury would require this court to manufacture whole cloth a replacement enforcement mechanism for Section 9712.1; in other words, the Commonwealth is asking us to legislate. We recognize that in the prosecution of capital cases in

> Pennsylvania, there is a similar, bifurcated process where the jury first determines guilt in the trial proceeding (the guilt phase) and then weighs aggravating and mitigating factors in the sentencing proceeding (the penalty phase). However, this mechanism was created by the General Assembly and is enshrined in our statutes at 42 Pa.C.S.[] § 9711. We find that it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following *Alleyne*. We cannot do so.

*Newman*, 99 A.3d at 102. Ultimately, the *Valentine* Court applied the holding of *Newman* to conclude that "the trial court performed an impermissible legislative function by creating a new procedure in an effort to impose the mandatory minimum sentences in compliance with *Alleyne*." *Valentine*, 101 A.3d at 811. Because *Newman* makes it clear that it is the General Assembly's function to determine what new procedures must be created to impose mandatory minimum sentences in this Commonwealth, the trial court exceeded its authority by asking the jury to determine the factual predicates of sections 9712(c) and 9713(c). *Id.* at 812.

Similarly, here the trial court exceeded its authority by permitting the jury, via a special verdict slip, to determine beyond a reasonable doubt the factual predicate of section 7508 – whether Mosley possessed cocaine that weighed greater than 10 grams. Even though the jury responded "yes" to the inquiry, the trial court performed an impermissible legislative function by creating a new procedure in an effort to impose the mandatory minimum sentence in compliance with *Alleyne*. Accordingly, we must vacate the defendant's judgment of sentence and remand for resentencing without the

mandatory minimum. *Valentine*, *supra*. *See also Commonwealth v. Ferguson*, 2015 PA Super 1 (Pa. Super. 2015) (defendant's sentence vacated and remanded for resentencing without consideration of mandatory minimum sentences where trial court lacked authority to have jury determine, via verdict slip, factual predicate under section 9712).

Convictions affirmed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/20/2015